UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JOHN SMITH, Individually and For Others Similarly Situated | **Case No.** _____ |
| v. | Jury Trial Demanded |
| MARATHON OIL COMPANY and STIM-TECH, INC. | FLSA Collective Action Pursuant to 29 U.S.C. § 216(b) |

**ORIGINAL COLLECTIVE ACTION COMPLAINT**

**SUMMARY**

1. John Smith (Smith) brings this collective action lawsuit to recover unpaid overtime wages and other damages from Marathon Oil Company (Marathon) and Stim-Tech, Inc. (Stim-Tech) (collectively, Defendants) under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA).

2. Defendants jointly employed Smith as a Health Safety Environmental (HSE) Advisor in North Dakota.

3. Like the Day Rate Workers (as defined below), Smith regularly worked more than 40 hours in a week.

4. But Defendants never paid Smith and the Day Rate Workers overtime wages.

5. Instead, Defendants paid Smith and the Day Rate Workers a flat amount for each day worked (a "day rate") without overtime compensation.

6. Defendants never paid Smith or the Day Rate Workers on a "salary basis."

7. Defendants' uniform day rate pay scheme violates the FLSA by depriving Smith and the Day Rate Workers of overtime pay when they work more than 40 hours in a workweek.

1

## JURISDICTION & VENUE

8. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

9. This Court has personal jurisdiction over Marathon because Marathon maintains its corporate headquarters and principal place of business in Houston, Texas.

10. This Court has personal jurisdiction over Stim-Tech because Stim-Tech conducts substantial business in Texas.

11. Indeed, Stim-Tech contracts with Marathon to provide workers, including Smith and the Day Rate Workers, to work on Marathon's oil and gas pipelines across the county, including in Texas.

12. Venue is proper because Defendants are both residents of the State of Texas, and Marathon maintains its headquarters in Houston, Texas, which is in this District and Division. 28 U.S.C. § 1391(b)(1).

## PARTIES

13. Smith worked for Defendants as an HSE Advisor in North Dakota from approximately July 2019 until September 2020.

14. Specifically, Marathon required Smith to work and be paid through Stim-Tech.

15. Throughout his employment, Marathon classified Smith as an independent contractor to avoid paying him overtime wages.

16. Throughout his employment, Defendants paid him a flat rate for each day he worked regardless of the total hours he worked in a day or week and failed to pay him overtime ("day rate pay scheme").

17. Smith's written consents are attached as **Exhibit 1**.

18. Smith brings this action on behalf of himself and all other similarly situated workers

who Stim-Tech staffed to Marathon and were paid under Defendants' illegal day rate pay scheme.

19. Defendants jointly employed each of these workers and paid them a flat amount for each day worked and failed to pay them overtime when they worked more than 40 hours in a workweek in violation of the FLSA.

20. The Putative Collective of similarly situated employees is defined as:

> **All individuals who Stim-Tech assigned to provide services to Marathon who were paid a day rate with no overtime at any time during the past 3 years ("Day Rate Workers" or "Putative Collective").**

21. The Day Rate Workers can be readily ascertained from Marathon's and Stim-Tech's business and personnel records.

22. Marathon is an Ohio company that maintains its headquarters in Houston, Texas.

23. Marathon may be served with process by serving its registered agent: **CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201**.

24. Stim-Tech is a Wyoming corporation that maintains its headquarters in Rock Springs, Wyoming.

25. Stim-Tech may be served with process by serving its registered agent: **David Cheezum, 1575 Dewar Drive, Suite 220, Rock Springs, Wyoming 82901**, or wherever he may be found.

## COVERAGE UNDER THE FLSA

26. At all relevant times, Marathon was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

27. At all relevant times, Stim-Tech was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

28. At all relevant times, Marathon was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

3

29. At all relevant times, Stim-Tech was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

30. At all relevant times, Marathon has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

31. At all relevant times, Stim-Tech has been part of an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1).

32. At all relevant times, Marathon has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

33. At all relevant times, Stim-Tech has, and has had, employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials (including tools, equipment, hardhats, cell phones/devices, personal protection equipment, etc.) that have been moved in or produced for commerce.

34. In each of the past 3 years, Marathon has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

35. In each of the past 3 years, Stim-Tech has had and has an annual gross volume of sales made or business done of not less than $500,000.00.

36. At all relevant times, Smith and the Day Rate Workers were Marathon's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

37. At all relevant times, Smith and the Day Rate Workers were Stim-Tech's "employees" within the meaning of Section 3(e)(1) of the FLSA, 29 U.S.C. § 203(e)(1).

38. At all relevant times, Smith and the Day Rate Workers were engaged in commerce or in the production of goods for commerce.

39. At all relevant times, Defendants treated Smith and the Day Rate Workers as employees and uniformly dictated the pay and other employment practices Defendants applied to them.

40. Indeed, at all relevant times, Defendants jointly employed Smith and the Day Rate Workers.

41. Marathon's misclassification of Smith and the Day Rate Workers as independent contractors does not alter their status as employees for purposes of the FLSA.

42. Defendants uniformly applied their policy of paying workers, including Smith and the Day Rate Workers, a day rate with no overtime compensation.

43. Defendants applied this policy regardless of any alleged individualized factors such as precise job title, project, or geographic location.

44. As a result of Defendants' uniform day rate pay scheme, Smith and the Day Rate Workers do not receive overtime compensation when they work more than 40 hours in a workweek in violation of the FLSA.

45. Defendants' uniform compensation scheme of paying Smith and the Day Rate Workers a day rate with no overtime compensation for weeks in which these workers work over 40 hours violates the FLSA. 29 U.S.C. § 207(a) & (e).

## FACTS

46. Marathon "is an independent exploration and production (E&P) company"[1] with operations across the country:

---

[1] https://www.marathonoil.com/about/ (last visited May 26, 2023).



47. Stim-Tech "provides quality design, engineering and on-site implementation services to assist energy operators[,]" including Marathon.[2]

48. To complete their business objectives, Marathon hires workers (including Smith and the Day Rate Workers) through Stim-Tech to work on the oil & gas pipelines and wells Marathon owns and/or operates.

49. Marathon uniformly misclassifies these workers (including Smith and the Day Rate Workers) as independent contractors to avoid paying them overtime wages.

50. But Marathon does not hire these workers (including Smith and the Day Rate Workers) on a project-by-project basis.

51. Rather, Marathon hires and treats these workers (including Smith and the Day Rate Workers) just like regular employees.

52. Indeed, despite uniformly misclassifying Smith and the Day Rate Workers as independent contractors, Marathon, jointly with Stim-Tech, controls all meaningful aspects of these workers' jobs.

---

[2] https://stimtech.net/ (last visited May 26, 2023).

53. Marathon and Stim-Tech jointly control Smith's and the Day Rate Workers' rates and methods of pay.

54. Marathon and Stim-Tech jointly control Smith's and the Day Rate Workers' schedules and assignments.

55. Marathon and Stim-Tech jointly control Smith's and the Day Rate Workers' work.

56. Marathon and Stim-Tech jointly require Smith and the Day Rate Workers to follow Marathon's and Stim-Tech's policies, procedures, plans, protocols, and specifications.

57. Smith's and the Day Rate Workers' work must strictly adhere to the quality standards put in place by Marathon and Stim-Tech.

58. Indeed, upon hiring, Marathon and Stim-Tech jointly require all individuals Stim-Tech assigns to work on Marathon's jobsites, including Smith and the Day Rate Workers, to complete trainings on Marathon's specific policies, procedures, and protocols to ensure their work conforms to the same.

59. Smith and the Day Rate Workers are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

60. Indeed, the daily and weekly activities of Smith and the Day Rate Workers are routine and largely governed by standardized plans, procedures, and checklists created by Marathon and Stim-Tech.

61. Virtually every job function is predetermined by Marathon and Stim-Tech, including the tools and equipment used at the job site, the data to compile, the schedule of work, and related work duties.

62. Marathon and Stim-Tech prohibit Smith and the Day Rate Workers from varying their job duties outside of the predetermined parameters and require Smith and the Day Rate Workers to follow Marathon's and Stim-Tech's policies, procedures, and directives.

63. Marathon and Stim-Tech prohibit Smith and Day Rate Workers from straying from Marathon's and Stim-Tech's procedures, plans, protocols, and specifications.

64. Without the job performed by Smith and the Day Rate Workers, Marathon would not be able to complete its business objectives of acquiring and developing oil and gas assets.

65. Likewise, without the job performed by Smith and the Day Rate Workers, Stim-Tech would not be able to complete its business objectives of providing services to energy operators, including Marathon.

66. Smith and the Day Rate Workers rely on Marathon and Stim-Tech for work and compensation.

67. Smith and the Day Rate Workers cannot subcontract out the work they are assigned by Marathon and Stim-Tech.

68. Smith and the Day Rate Workers do not substantially invest in the tools required to complete the overall job to which they were assigned.

69. Rather, Marathon and Stim-Tech incurs the large-scale business and operating expenses like marketing, equipment, tools, jobsites, pipelines, wells, and materials.

70. In fact, upon hiring, Marathon provides all the individuals working on its jobsites, including Smith and the Day Rate Workers, with a company hardhat with Marathon's logo through Stim-Tech.

71. Smith and the Day Rate Workers did not market their services while employed by Marathon and Stim-Tech.

72. Marathon and Stim-Tech jointly set Smith and the Day Rate Workers' work schedule, which prohibited them from working other jobs for other companies while working for Defendants.

73. Indeed, Smith and the Day Rate Workers are required to travel and live at their assigned jobsites during their 2-week hitches.

74. At all relevant times, Marathon and Stim-Tech jointly maintained control, oversight, and direction of Smith and the Day Rate Workers, including, but not limited to, hiring, firing, disciplining, and other employment practices.

75. At all relevant times, Marathon and Stim-Tech jointly possessed the authority to hire, fire, and discipline Smith and the Day Rate Workers.

76. At all relevant times, Marathon and Stim-Tech jointly supervised and controlled Smith's and the Day Rate Workers' schedules, rate and method of pay, work, and other conditions of their employment.

77. At all relevant times, Marathon and Stim-Tech jointly maintained employment records for Smith and the Day Rate Workers.

78. In sum, at all relevant times, Marathon and Stim-Tech jointly employed Smith and the Day Rate Workers.

79. Smith and the Day Rate Workers worked for Defendants on a day rate basis.

80. While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

81. For example, Smith worked for Defendants as an HSE Advisor in North Dakota from approximately July 2019 until September 2020.

82. As an HSE Advisor, Smith's primary job duties included ensuring all operations are safely completed in accordance with Marathon's and Stim-Tech's specifications, policies, and

9

expectations, as well as all OSHA and other safety regulations; conducting safety meetings; and submitting daily reports to Marathon through Stim-Tech.

83. Throughout his employment, Marathon paid Smith on a day rate basis (without overtime).

84. Specifically, throughout his employment, Marathon paid Smith a day rate of approximately $832 for each day he actually worked through Stim-Tech, regardless of the number of hours he worked that day (or that workweek) and failed to pay him overtime compensation:

| Earnings and Hours | Qty | Rate | Current |
|---|---|---|---|
| Day Rate | 17.00 | 832.00 | 14,144.00 |

85. Defendants uniformly paid Smith and the Day Rate Workers under its illegal day rate pay scheme that deprived these employees of overtime compensation when they worked more than 40 hours in a workweek.

86. Defendants do not pay Smith and the Day Rate Workers a guaranteed salary.

87. Rather, Defendants only pay Smith and the Day Rate Workers their set day rates for the actual days they worked.

88. If Smith and the Day Rate Workers did not work, they did not get paid.

89. Thus, Smith and the Day Rate Workers are not paid on a "salary basis *See Helix Energy Sols. Grp., Inc. v. Hewitt*, 598 U.S. ---, 143 S.Ct. 677, 685 (2023) ("Daily-rate workers, of whatever income level, are paid on a salary basis only through the test set out in § 604(b)"); *see also* 29 C.F.R. § 541.604.

90. Defendants paid Smith and the Day Rate Workers on a day rate basis (without overtime).

91. Smith's and the Day Rate Workers' day rates do not increase when they work more than 40 hours in a week.

92. Smith and the Day Rate Workers do not receive overtime pay when they work more than 40 hours in a week.

93. This is despite Smith and the Day Rate Workers regularly working 12+ hours a day, for 7 days a week, for 2-week hitches.

94. Although Smith and the Day Rate Workers typically worked 84+ hours/workweek, Defendants never paid them overtime compensation.

95. Smith and the Day Rate Workers work in accordance with the schedule set by Defendants.

96. Defendants know Smith and the Day Rate Workers work 12+ hours a day, for 7 days a week because Defendants expect and require them to do so.

97. Indeed, Marathon's and Stim-Tech's records reflect the fact that Smith and the Day Rate Workers regularly work far in excess of 40 hours in certain workweeks.

98. Rather than receiving time and half as required by the FLSA, Marathon pays Smith and the Day Rate Workers a day rate through Stim-Tech regardless of the number of hours they worked in a day or workweek, and even if they worked more than 40 hours in a workweek.

99. All of the Day Rate Workers perform similar job duties, work similar hours, and are denied overtime wages as a result of the same illegal pay practice (Defendants' day rate pay scheme).

100. All of the Day Rate Workers work in excess of 40 hours each week and often work 84+ hours in a workweek.

101. Defendants uniformly and jointly deny Smith and the Day Rate Workers overtime for the hours they work more than 40 hours in a workweek.

102. Defendants' policy of paying Smith and the Day Rate Workers a day rate with no overtime compensation violates the FLSA because it deprives Smith and the Day Rate Workers of overtime compensation for the hours that they work in excess of 40 hours in a workweek.

### COLLECTIVE ACTION ALLEGATIONS

103. Smith realleges and incorporates all other paragraphs by reference.

104. Smith brings his claim as a collective action on behalf of himself and the Day Rate Workers pursuant to Section 216(b) of the FLSA.

105. Numerous individuals were victimized by Defendants' pattern, practice, and policy of paying the workers Stim-Tech assigns to Marathon, including Smith and the Day Rate Workers, a day rate with no overtime, which is in willful violation of the FLSA.

106. Numerous other Day Rate Workers worked with Smith and indicated they were paid in the same manner (a day rate with no overtime) and performed similar work.

107. Based on his experience and tenure with Marathon and Stim-Tech, Smith is aware that that the illegal practices Defendants imposed on him were likewise imposed on the Day Rate Workers.

108. The Day Rate Workers are similarly situated in all relevant respects.

109. Defendants' joint failure to pay Smith and the Day Rate Workers overtime wages at the premium rates required by the FLSA results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Day Rate Workers.

110. The specific job titles or precise job locations of the Day Rate Workers do not prevent collective treatment.

111. Smith has no interest contrary to, or in conflict with, the Day Rate Workers.

112. Like each Day Rate Worker, Smith has an interest in obtaining the unpaid overtime wages owed to them under federal law.

113. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

114. Absent this collective action, many Day Rate Workers likely will not obtain redress for their injuries, and Marathon and Stim-Tech will reap the unjust benefits of violating the FLSA.

115. Even if some of the Day Rate Workers could afford individual litigation against Marathon and Stim-Tech, it would be unduly burdensome to the judicial system.

116. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual Day Rate Workers and provide judicial consistency.

117. The questions of law and fact that are common to Smith and each Day Rate Worker predominate over any questions affecting solely the individual members.

118. Among the common questions of law and fact are:

    a. Whether Marathon and Stim-Tech jointly employed Smith and the Day Rate Workers;

    b. Whether, as a matter of economic reality, Smith and the Day Rate Workers were Marathon's employees under the FLSA;

    c. Whether Defendants' illegal day rate pay scheme was applied uniformly across the nation to all Day Rate Workers;

    d. Whether Smith and the Day Rate Workers were exempt from overtime;

    e. Whether Defendants' day rate pay scheme satisfies the salary basis test;

    f. Whether Marathon's decision to classify Smith and the Day Rate Workers as independent contractors was made in good faith;

    g. Whether Defendants' joint decision to not pay Smith and the Day Rate Workers overtime compensation was made in good faith; and

    h. Whether Defendants' violations of the FLSA were willful.

119. Smith's claims are typical of the claims of the Day Rate Workers.

120. Smith and the Day Rate Workers sustained damages arising out of Defendants' illegal and uniform employment policies and practices.

121. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts.

122. Therefore, the issue of damages does not preclude collective treatment.

123. Defendants are jointly and severally liable under the FLSA for failing to pay overtime wages to Smith and the Day Rate Workers.

124. Consistent with Defendants' illegal day rate pay scheme, Smith and the Day Rate Workers were not paid the proper premium overtime wages when they worked more than 40 hours in a workweek.

125. As part of their regular business practices, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Smith and the Day Rate Workers.

126. Defendants' illegal day rate pay scheme deprived Smith and the Day Rate Workers of the premium overtime wages they are owed under federal law.

127. There are many similarly situated Day Rate Workers who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

128. Notice of this lawsuit should be sent to the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

129. Those similarly situated workers (the Day Rate Workers) are known to Marathon and Stim-Tech, are readily identifiable, and can be located through Marathon's and Stim-Tech's business and personnel records.

## MARATHON'S AND STIM-TECH'S FLSA VIOLATIONS WERE WILLFUL OR DONE IN RECKLESS DISREGARD FOR THE FLSA

130. Smith realleges and incorporates all other paragraphs by reference.

131. Marathon knew it was subject to the FLSA, including its overtime provisions.

132. Stim-Tech knew it was subject to the FLSA, including its overtime provisions.

133. Marathon knew the FLSA requires it to pay employees, including Smith and the Day Rate Workers, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

134. Stim-Tech knew the FLSA requires it to pay employees, including Smith and the Day Rate Workers, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

135. Marathon and Stim-Tech knew they jointly controlled Smith's and the Day Rate Workers' work and job duties.

136. Marathon and Stim-Tech knew they jointly prohibited Smith and the Day Rate Workers from straying from Marathon's and Stim-Tech's strict procedures, plans, protocols, and specifications.

137. Marathon and Stim-Tech knew they jointly controlled Smith's and the Day Rate Workers' schedules.

138. Marathon and Stim-Tech knew Smith and the Day Rate Workers regularly work 12+ hours a day, for 7 days a week, for 2-week hitches.

139. Marathon and Stim-Tech knew they jointly required Smith and the Day Rate Workers to live at or near the jobsites during their 2-week hitches.

140. Marathon and Stim-Tech knew Smith's and the Day Rate Workers' schedules necessary prohibited them from working other jobs while working for Defendants.

141. Marathon and Stim-Tech knew Smith and the Day Rate Workers relied on Defendants for work and compensation.

142. Marathon and Stim-Tech knew they jointly controlled Smith's and the Day Rate Workers' rates and methods of pay.

143. Thus, Marathon and Stim-Tech knew, or should have known, that they jointly employed Smith and the Day Rate Workers were.

144. Marathon and Stim-Tech knew they jointly paid Smith and the Day Rate Workers on a day rate basis.

145. Marathon and Stim-Tech knew they did not pay Smith and the Day Rate Workers overtime wages when these employees worked more than 40 hours in a workweek.

146. Rather, Marathon and Stim-Tech knew they jointly paid Smith and the Day Rate Workers a flat daily rate, regardless of the number of hours they worked that day or in a workweek.

147. Marathon and Stim-Tech knew they did not pay Smith and the Day Rate Workers on a "salary basis."

148. Marathon and Stim-Tech knew they did not pay Smith and the Day Rate Workers any minimum guaranteed salary.

149. Marathon and Stim-Tech knew their day rate pay scheme did not satisfy the salary basis test necessary to classify Smith and the Day Rate Workers as exempt from the FLSA's overtime provisions.

150. Thus, Marathon and Stim-Tech knew, or should have known, Smith and the Day Rate Workers were non-exempt employees and, therefore, entitled to overtime compensation when they worked more than 40 hours in a workweek.

151. Marathon and Stim-Tech knew Smith and the Day Rate Workers worked more than 40 hours in a week because Defendants jointly expected and required these workers to do so.

16

152. Nonetheless, Marathon and Stim-Tech jointly failed to pay Smith and the Day Rate Workers overtime wages when these employees worked in excess of 40 hours in a workweek.

153. Marathon's and Stim-Tech's joint failure to pay Smith and the Day Rate Workers overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

154. Marathon and Stim-Tech knowingly, willfully, and/or in reckless disregard carried out this illegal day rate pay scheme that deprived Smith and the Day Rate Workers of overtime compensation for hours worked in excess of 40 hours in a workweek in violation of the FLSA.

155. Marathon and Stim-Tech knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA.

156. Indeed, Marathon (and its affiliated entities) has been repeatedly sued before for failing to pay employees overtime wages. *See, e.g., Callaway v. Marathon Oil Co.*, No. 5:20-CV-00863 (W.D. Tex.); *Sanchez v. Marathon Oil Co., et al.*, No. 4:20-CV-01044 (S.D. Tex.); *Hebert v. Marathon Oil Company, et al.*, No. 4:20-CV-00998 (S.D. Tex.); *Kirkpatrick, et al. v. Marathon Oil Co.*, No. 5:19-CV-00364-JD (W.D. Okla.); No. 5:19-CV-00364-JD (W.D. Okla.); *Edwards v. Marathon Oil Corp.*, No. 4:17-CV-03662 (S.D. Tex.); *Taylor v. Marathon Oil Corp.*, No. 4:17-CV-03663 (S.D. Tex.); *Baucum v. Marathon Oil Corp.*, No. 4:16-CV-03278 (S.D. Tex.); *York v. Marathon Oil Co., et al.*, No. 4:15-CV-03076 (S.D. Tex.).

<u>CAUSE OF ACTION</u>
**FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA**

157. Smith realleges and incorporates all other paragraphs by reference.

158. Smith brings his FLSA claims as a collective action on behalf of himself and the Day Rate Workers pursuant to 29 U.S.C. § 216(b).

159. As set forth herein, Defendants violated, and is violating, the FLSA, 29 U.S.C. § 207, by employing employees (Smith and the Day Rate Workers) in an enterprise engaged in commerce or

in the production of goods for commerce within the meaning of the FLSA for workweeks longer than 40 hours without paying those employees overtime wages for their work in excess of 40 hours per week at rates not less than 1.5 times the regular rates of pay.

160. Defendants knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Smith and the Day Rate Workers overtime compensation.

161. Defendants' joint failure to pay Smith and the Day Rate Workers overtime compensation was neither reasonable, nor was the decision not to pay these employees overtime compensation made in good faith.

162. Accordingly, Smith and the Day Rate Workers are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their regular rates of pay, plus an equal amount as liquidated damages, as well as attorney's fees and costs.

## JURY DEMAND

163. Smith demands a trial by jury.

## RELIEF SOUGHT

WHEREFORE, Smith individually, and on behalf of the Day Rate Workers, prays for the following relief:

    a. An Order designating this lawsuit as a collective action and authorizing notice pursuant to 29 U.S.C. § 216(b) be sent to the Day Rate Workers allowing them to join this action by filing their written consent;

    b. An Order pursuant to Section 16(b) of the FLSA finding Defendants jointly liable for unpaid back wages due to Smith and the Day Rate Workers, as well as for liquidated damages in an amount equal to their unpaid compensation;

    c. A Judgment against Defendants awarding Smith and the Day Rate Workers all their unpaid overtime and other damages available under the FLSA;

   d.  An Order awarding attorney's fees, costs, and expenses;

   e.  Pre- and post-judgment interest at the highest applicable rates; and

   f.  Such other and further relief as may be necessary and appropriate.

| | |
|---|---|
| Dated: May 30, 2023. | Respectfully submitted,<br><br>By: */s/ Michael A. Josephson*<br>**Michael A. Josephson**<br>TX Bar No. 24014780<br>Federal ID No. 27157<br>**Andrew W. Dunlap**<br>TX Bar No. 24078444<br>Federal ID No. 1093163<br>**JOSEPHSON DUNLAP LLP**<br>11 Greenway Plaza, Suite 3050<br>Houston, Texas 77046<br>713-352-1100 – Telephone<br>713-352-3300 – Facsimile<br>mjosephson@mybackwages.com<br>adunlap@mybackwages.com<br><br>**Richard J. (Rex) Burch**<br>TX Bar No. 24001807<br>Federal ID No. 21615<br>**BRUCKNER BURCH PLLC**<br>11 Greenway Plaza, Suite 3025<br>Houston, Texas 77046<br>713-877-8788 – Telephone<br>713-877-8065 – Facsimile<br>rburch@brucknerburch.com<br><br>**ATTORNEYS FOR PLAINTIFF**<br>**& PUTATIVE CLASS MEMBERS** |